UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WAKA, LLC, | ) |
| | ) |
|     **Plaintiff - Counterclaim Defendant** | ) |
| | ) |
| v. | ) Civil Action No. 1:06cv00984 EGS |
| | ) |
| DC KICKBALL, et al. | ) |
| | ) |
|     **Defendants - Counterclaim Plaintiffs.** | ) |
| | ) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF 12(b)(6) MOTION TO DISMISS COUNTERCLAIMS AND/OR 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING COUNTERCLAIM

COMES NOW, WAKA, LLC (hereinafter "WAKA" or "Counterclaim Defendant"), pursuant to *Rule 12(b)(6) and/or Rule 12(c) of the Federal Rules of Civil Procedure,* and files this motion to dismiss the counterclaims for failure to state a claim or alternatively for a judgment on the pleadings dismissing the counterclaims with prejudice as a matter of law.

### PROCEDURAL POSTURE

This case began with WAKA, LLC ("WAKA") filing a well pleaded complaint over Defendants' theft of WAKA's rules, regulations and handbook materials for an adult kickball league. Specifically, WAKA alleges that Defendants have knowingly copied and used all of the copyright-protected WAKA rules for creating the social activity of adult kickball, have sought on numerous occasions to interfere with WAKA's participants, and have further actively engaged in a campaign to defame WAKA in an effort to cultivate the DC Kickball league. Thus, Defendants are building a business on WAKA's intellectual property and seek to profit from the daily infringement and defamation.

In an effort to protect its intellectual property, WAKA has sought relief from this Court; in response, the defendants have filed an answer denying liability and denying the allegations.

Defendants have also filed counterclaims consisting of two counts: one for damages for an antitrust conspiracy in violation of the Sherman and Clayton acts and the other for similar damages under D.C.'s antitrust law. These counterclaims are the subject of this motion to dismiss. The counterclaims are not well founded under the circumstances; and neither counterclaim is properly pleaded. Even if the allegations are taken as true, the counterclaims should be dismissed as a matter of law.

## HISTORY AND FACTUAL BACKGROUND

WAKA was founded in 1998 by four long-time friends: David Lowry ("Lowry"); John LeHane ("LeHane"); Jimmy Walicek ("Walicek"); and Rich Humphrey ("Humphrey"). Each of these individuals holds approximately one quarter of the interest in WAKA. The idea was to start a co-ed organization that used the sport of kickball to provide a social outlet for young professionals. The four men created a club sponsored by the owner of Kelly's Irish Times, a pub in Washington, D.C. Two weeks later WAKA gathered some friends together to launch the project by the Washington Monument. After discovering how successfully men and women interacted with each other at this function, WAKA performed an extensive search for published kickball rules to formalize the arrangement. At that time, there were no adult social kickball groups, no published history of social kickball, or anything at all about the activity to speak of. WAKA started from scratch.

In 1998, WAKA promulgated the first ever "Official Kickball Rules" (the "Rules"). Although the sport of kickball had been around for decades, the Rules incorporated clearly unique requirements including that there be 4 men *and* 4 women at a minimum to play; that players must be at least 21 years old in order to participate in post-game functions at establishments that serve alcohol; and the various unique requirements to preserve the balance of

men and women on each team, and to maximize the social interaction of men and women on each team.  It is believed and alleged that these unique rules have contributed to WAKA's success.

WAKA's first website was located at the URL http://www.aol.com/dckickball with a contact e-mail address of dckickball@aol.com.  In 2005, WAKA discovered that Defendant Carter Rabasa, a former WAKA division president had used all of the proprietary information he obtained while with WAKA and in violation of this fiduciary duties and duty of loyalty, had created DC Kickball using the WAKA Rules and was planning to operate a competing social kickball organization in the Washington DC area.

Consequently, in this lawsuit in which WAKA seeks to protect their intellectual property, DC Kickball and Rabasa have chosen to complain that the enforcement of its intellectual property rights amounts to anticompetitive behavior.  Inasmuch as the Defendants' counterclaims do not adequately allege antitrust theories, their claims must be dismissed as a matter of law.

## LEGAL ARGUMENT

**1. Standard for Granting a Motion to Dismiss an Antitrust Claim**.

On a motion to dismiss or for judgment on the pleadings, the Court must assume the truth of the facts alleged in the complaint and may grant the motion only if it appears that plaintiff will be unable to prove any set of facts that would justify relief under the complaint.  *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 111 S. Ct. 1842, 1845, 114 L. Ed. 2d 366 (1991); *Scheuer v. Rhodes*, 416 U.S. 232, 237, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974); *Haynesworth v. Miller*, 261 U.S. App. D.C. 66, 820 F.2d 1245, 1254 (D.C. Cir. 1987). To survive such a motion in an antitrust case, however, a plaintiff must do more than simply paraphrase the language of the federal antitrust laws or state in conclusory terms that a defendant has violated those laws. "If he

3

claims an antitrust violation, but the facts he narrates do not at least outline or adumbrate such a violation, he will get nowhere merely by dressing them up in the language of antitrust." *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir. 1984). *See TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 121 L. Ed. 2d 537, 113 S. Ct. 601 (1992). Bare legal conclusions will not suffice. *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d at 654; *Dial A Car, Inc., v. Transportation, Inc. and Barwood, Inc.*, 884 F. Supp. 584(D.D.C. 1995).

Bare legal conclusions are all that the counterclaimants have set forth in their counterclaim and thus for the reasons which follow, the counterclaim should be dismissed.

## 2. Counterclaimants Have Failed to Adequately Allege Antitrust Injury.

The following paraphrase from *Dial A Car, supra* is instructive in setting out what makes an adequate complaint under antitrust law. *Dial A Car* states that a party claiming federal antitrust violations must plead and prove "more than injury causally linked to an illegal presence in the market." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 50 L. Ed. 2d 701, 97 S. Ct. 690 (1977)*,* it must also show an anticompetitive impact on the market. *Id. at 488* (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 8 L. Ed. 2d 510, 82 S. Ct. 1502 (1962)). This is because the law was designed to protect competition, not individual competitors. An antitrust plaintiff therefore must plead and prove "antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *429 U.S. at 489.* The injury claimed must "reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Id*. The antitrust laws were not intended to prevent losses that result from increased competition but those resulting from activity that may tend to lessen competition. *See*, *e.g*., *Brown Shoe Co. v.*

4

*United States,* 370 U.S. at 320. The reason an antitrust plaintiff is required to plead antitrust injury is to assure that a plaintiff can recover "only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior." *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 344, 109 L. Ed. 2d 333, 110 S. Ct. 1884 (1990).

DC Kickball and Rabassa have pled no facts that show that WAKA's conduct is anticompetitive, that it has reduced or is reducing competition, has restrained or is restraining trade, or has forced or is forcing competitors out of the market. Indeed, it has alleged no impact on competition at all. At most, DC Kickball and Rabassa have pled in conclusory fashion that the use of their copyright claim over their rules, regulations and materials is being wrongfully asserted in an attempt to limit competition in the adult kickball league market. Absent a demonstrated injury to competition, the pleading requirements are not satisfied. *Mizlou Television Network, Inc. v. National Broadcasting Co.,* 603 F. Supp. 677 (D.D.C. 1984). Without any "factually supported allegations of anticompetitive effect," plaintiff's antitrust claims must be dismissed. *Association of Retail Travel Agents, Ltd. v. Air Transport Ass'n of America,* 635 F. Supp. 534, 537 (D.D.C. 1986).

### 3. Plaintiff Has Failed To Allege Facts Sufficient To Claim Attempted Monopolization.

In addition to failing to allege antitrust injury, DC Kickball and Rabassa have not alleged in any fashion other than conclusory terms (1) a specific intent to destroy competition or control competition in the relevant market, and (2) a dangerous probability of success in actually monopolizing the relevant market, both essential elements for an attempted monopolization claim. *Association of Retail Travel Agents, Ltd. v. Air Transport Ass'n of America*, 635 F. Supp. at 538; *see also Spectrum Sports, Inc. v. McQuillan,* 122 L. Ed. 2d 247, 113 S. Ct. 884, 890-91

5

(1993)*; TV Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d at 1025*; Association for Intercollegiate Athletics for Women v. N.C.A.A.,* 236 U.S. App. D.C. 311, 735 F.2d 577, 585 (D.C. Cir. 1984). This requires "a definition of the relevant market and examination of market power." *Spectrum Sports, Inc. v. McQuillan,* 113 S. Ct. at 890. Because the relevant issue is the power of the defendant in the market in which it competes, the antitrust claimant must plead facts sufficient to establish the existence of a relevant market and the defendant's power in that market." *TV Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d at 1025-26. Those allegations are conspicuously absent in the counterclaims at issue. There is no statement as to what the relevant market is, the specific intent by WAKA to destroy or control competition in that relevant market nor is there an allegation that there is a dangerous probability of success in actually monopolizing the relevant market.

DC Kickball and Rabassa allege only that WAKA's "baseless copyright infringement claim" is being asserted in an attempt to limit competition in what is described as the adult kickball league market. The allegations do not contain facts to show what the relevant market is and do not contain any set of facts from which the Court reasonably could infer that WAKA is bringing its copyright claim with the specific intent to eliminate DC Kickball and Rabassa or other competitors from the market so they [WAKA] can later take it over at higher rates. *Id.* at 684*; TV Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d at 1024*,; Budget Rent A Car of Westchester, Inc. v. Rental Car Resources, Inc.,* 842 F. Supp. at 616.

DC Kickball and Rabasssa have not at all pled a dangerous probability that WAKA will succeed in monopolizing the relevant market, ie, "where the defendant possesses a significant market share when it undertakes the challenged anticompetitive conduct," *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.,* 879 F.2d 1005, 1017 (2d Cir. 1989), or where

the defendant has the "power to control price and exclude competition generally in the relevant market." *Mizlou Television Network, Inc. v. National Broadcasting Co.,* 603 F. Supp. at 684 (citations omitted). Because there are no facts that "even hint at an actual, imminent or intended concentration of market power" , the only conclusion that can be drawn is that the allegations fail to state a claim under Section 2 of the Sherman Antitrust Act. *Id*.; *See also Association of Retail Travel Agents, Ltd. v. Air Transport Ass'n of America,* 635 F. Supp. at 538.

The allegations of the counterclaims are also conspicuously omitting allegations showing that WAKA has the kind of actual or probable market power necessary to exclude competition generally from the market or to force DC Kickball or Rabassa out of the market. There are not even any facts alleged to claim that the market is capable of being monopolized, what market share WAKA possesses, or any facts concerning WAKA's market position relative to other market participants. See citations in *Dial A Car, supra,* including: *Deem v. Lockheed Corp.,* 749 F. Supp. 1230, 1236-37 (S.D.N.Y. 1989), generally, cases *holding that the* omission of such factual allegations "is fatal." *Mizlou Television Network, Inc. v. National Broadcasting Co.,* 603 F. Supp. at 684, and that "Even a claim of attempt to monopolize requires a plaintiff to plead facts alleging a dangerous probability that, if unchecked, the defendant's conduct will ripen into monopolization." *Id*.  In the absence of any such facts, plaintiff's complaint must be dismissed.

### 4. Plaintiff Has Failed To Allege Facts Sufficient To Claim Combination or Conspiracy In Restraint of Trade.

To state a proper claim for conspiracy in restraint of trade, the counterclaimants are required to allege that WAKA entered into some contract, combination, conspiracy or other concerted activity that unreasonably restricts trade in the relevant market. *TV Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d at 1027*; Association of Retail Travel Agents,*

*Ltd. v. Air Transport Ass'n of America,* 635 F. Supp. at 536. The sufficiency of an allegation of "an unreasonable restraint on competition . . . . turns on the consequences of [defendants'] conduct in the relevant market." *Mizlou Television Network, Inc. v. National Broadcasting Co.,* 603 F. Supp. at 683 (as set forth and cited in *Dial A Car, supra*).

The sole factual allegation is that WAKA has wrongfully asserted its copyright claim in an effort to restrain trade. There is no allegation that WAKA has entered into an agreement, combination and/or conspiracy to divide the relevant market among themselves, to illegally provide relevant market services at lower prices than those at which Counterclaimants can provide such services with the specific intent to preclude competitors, and to replace the low-priced services with lawful, higher-priced services once they have succeeded in driving counterclaimants from the market. Plaintiff has not alleged any facts from which the Court may infer concerted activity or coordinated conduct, let alone any competition-restraining conduct or unreasonable restraints of trade. Without an allegation that there is a conspiracy to drive prices artificially low only to raise them artificially high once competitors are gone, there is not the necessary allegation for conspiracy, combination or other activity embarked upon to claim restraint of trade. *Dial A Car*, *supra citing Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. at 340.

**5.   Counterclaimants' Claims Fail Under the Intracorporate Immunity Doctrine**.

In addition, in order to make out a claim of conspiracy or collusive behavior, the claims must include the identity of other (s) with whom WAKA is alleged to have conspired. Hence, the counterclaims must also fail as there is no other entity with whom WAKA is alleged to have conspired or combined in an effort to restrain trade. Under the antitrust theories posited by Defendants, there must be more than one actor. If there is not, then the claims must be dismissed

under the "intracorporate immunity" doctrine. *Wesley v. Howard University*, 3 F. Supp. 2d 1 (1998).

Under the "intracorporate immunity" doctrine, an entity, its officers and agents are presumed to act as a single enterprise and may not be found to have conspired with one another. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769, 81 L. Ed. 2d 628, 104 S. Ct. 2731 (1984). Although intracorporate immunity can be overcome by a showing that the agents of an entity are acting "solely for personal, nonbusiness motivations," *Weaver v. Gross*, 605 F. Supp. 210, 215 (D.D.C. 1985), Counterclaimants have neither alleged facts nor can they allege facts to satisfy this exception; the sole basis of the counterclaim is that by itself WAKA is using its claim of copyright as an attempt to limit competition in the adult kickball league market. See counterclaim at ¶ 7, reiterated at ¶ 10 and 13. Consequently, there is no showing that any of the agents, members of the league or anyone else is conspiring or combining to restrain trade. It is just the league rules and WAKA's enforcement of its copyright claim over those rules which the Counterclaimants are seeking to use as a basis for this antitrust theory of recovery. An antitrust conspiracy -- as with any other conspiracy -- requires more than one participant. Plaintiff's amended complaint therefore fails to state a Sherman Act claim.

**6.    The counterclaim arising under the District of Columbia law is also subject to dismissal.**

Count Two also alleges a violation of the District of Columbia Unfair Trade Practices Act, D.C. Code § 28-4508. Where a complaint fails to state a claim under the Sherman Act (for any reason other than lack of an effect on interstate commerce), it also fails as a matter of law under the District of Columbia Unfair Trade Practices Act. See *Dial A Car v. Transportation, Inc.*, 884

F. Supp. 584, 588 n.2 (D.D.C. 1995), *aff'd*, 317 U.S. App. D.C. 240, 82 F.3d 484 (D.C. Cir. 1996).

### 7. The counterclaims fail under the Noerr-Pennington Doctrine.

The counterclaims are barred by the Noerr-Pennington doctrine which specifically allows a company or person to sue to protect their intellectual property.

The Noerr-Pennington doctrine provides immunity from tort liability for the act of filing a lawsuit, based on the First Amendment rights to free speech and to petition the court. *See*, *e.g*. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1080 (8th Cir. 1999) (*citing Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965)). Originally, at least, the doctrine exempted from antitrust laws certain petitioning of the courts and administrative agencies that resulted in anti-competitive effects. *South Dakota v. Kansas City Southern Indus., Inc.*, 880 F.2d 40, 50-51 n.23 (8th Cir. 1989) (citing *California Motor Transp. Co. v.Trucking Unlimited*, 404 U.S. 508, 510 (1972)). However, the doctrine has since been applied to provide immunity from other kinds of claims, besides antitrust violations. *Id*.at 50-51 & n.24; *Hufsmith v. Weaver*, 817 F.2d 455, 457-58 (8th Cir. 1987) (noting that the court had held that the doctrine is applicable to tort claims, not just antitrust claims).

The Counterclaimants' entire claim under the Sherman Act and the D.C. version is predicated upon the filing of a lawsuit, specifically stated "by bringing this baseless action for copyright infringement is impermissibly attempting to expand the scope of protection of the alleged work beyond the limits allowed by the copyright laws of the United States. Counter Defendant is thus knowingly and wrongfully asserting a copyright claim in an attempt to limit competition in the adult kickball league market." Defendants' Counterclaims, p.11 ¶ 7. This is exactly the type of case that has protected status under the Noerr-Pennington Doctrine.

## CONCLUSION

The counterclaims appear to be nothing more than an effort to defend by going on the offensive, to strain a sports analogy. The counterclaims do not smack of antitrust allegations and attempt to divert the real issue in the case which is whether or not WAKA ought to have copyright protection over its original material with respect to the adult kickball league.

For all of the foregoing reasons, the counterclaims asserted by DC Kickball and Rabassa are not well founded in law and should be dismissed either for failure to state a claim which can be granted or resolved in favor of Plaintiff on a judgment on the pleadings.

Respectfully submitted,

Dated January 9, 2007          **WAKA, LLC**
By its attorneys,

/s/ Thomas M. Dunlap
Thomas M. Dunlap, D.C. Bar # 471319
Lee E. Berlik, D.C. Bar# 458370
Eugene W. Policastri, D.C. Bar# 470203
DUNLAP, GRUBB & WEAVER P.C.
1200 G Street, NW Suite 800
Washington, DC 20005
Counsel for Plaintiffs
Telephone: 202-316-8558
Facsimile: 202-318-0242
tdunlap@dglegal.com
*Attorney for the Plaintiff - Counterclaim Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that this 9th day of January, 2007, a true and correct copy of the foregoing MEMORANDUM OF GROUNDS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS was sent via US First Class Mail and facsimile to the following:

Melvin A. Todd
NOVAK DRUCE & QUIGG LLP
1300 Eye Street, NW
400 East Tower
Washington, DC 20005
Phone 202-659-0100
Facsimile 202-659-0105

                                              /s/ Thomas M. Dunlap
                                              Thomas M. Dunlap