**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WAKA, LLC, | ) |
| | ) |
| Plaintiff-Counterclaim Defendant, | ) |
| | ) |
| v. | ) Civil Action No. 1:06cv00984 EGS |
| | ) |
| DC KICKBALL, | ) |
| and | ) |
| CARTER RABASA, Individually | ) |
| | ) |
| Defendants-Counterclaim Plaintiffs. | ) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S 12(b)(6) MOTION TO DISMISS COUNTERCLAIMS AND/OR 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING COUNTERCLAIMS**

DEFENDANTS/COUNTER-PLAINTIFFS DC Kickball and Carter Rabasa (herein "DC Kickball") file this Memorandum in Opposition to Plaintiff's 12(b)(6) Motion to Dismiss Counterclaims and/or 12(c) Motion for Judgment on the Pleadings Dismissing Counterclaim.

**I.      INTRODUCTION**

This lawsuit is about Plaintiff WAKA, LLC and its organization, the "World Adult Kickball Association" – the self-proclaimed "world's largest adult social kickball organization" – and their attempts to create and maintain a monopoly in a market they have for years dominated. (Plaintiff/Counter-Defendant hereinafter is referred to as "WAKA"). Through, *inter alia*, the misuse if not abuse of copyright law, WAKA is

claiming "ownership" of the rules by which the game of kickball is played, and is attempting to use this legally baseless claim of "ownership" to prevent other adult kickball leagues from competing in the relevant market. Fledgling adult kickball leagues like DC Kickball, who do not accept WAKA's claim to "own" the rules universally used for adult kickball, or who express legitimate criticism of WAKA, find themselves sued. The message sent to other smaller adult kickball leagues and those who might wish to form competing adult kickball leagues is loud and clear.

Through this artifice of claiming to have "invented" the rules for how kickball is played, WAKA now wrongfully accuses DC Kickball of "theft." Given an opportunity to conduct discovery, DC Kickball will show this to be part of larger, concerted action by WAKA to prevent the formation and entry into the relevant market of new adult kickball leagues, while inhibiting competition from existing adult kickball leagues who – notwithstanding the monopoly power possessed by WAKA – do not agree to sanction WAKA's disingenuous and plainly anticompetitive claim that they "invented" the rules of kickball and have the power to prevent others from playing the game.

The gist of Plaintiff's Motion to Dismiss is a claim is that it does not have fair notice of DC Kickball's antitrust claims. However, as shown below, WAKA has all the notice required by Federal Rules, and DC Kickball's Counterclaim properly pleads antitrust actions and alleges facts in support of those claims. At this stage, the Court's task in reviewing the sufficiency of DC Kickball's pleadings is not to determine whether DC Kickball ultimately will prevail on the merits, but simply whether DC Kickball should be allowed to develop and offer evidence supporting its claims. Under the relevant authorities discussed below, DC Kickball is entitled to this opportunity.

## II.  THE STRONG STANDARD OF REVIEW FOR MOTION TO DISMISS

As noted above, the District Court's task in reviewing the sufficiency of DC Kickball's counterclaims in response to the Plaintiff's Rule 12(b)(6) motion, before any evidence has been submitted, is limited. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The issue is not whether DC Kickball will ultimately prevail on the merits, but simply whether DC Kickball is entitled to offer evidence to support its claims. *See id*.

Motions to dismiss for failure to state a claim upon which relief can be granted are generally viewed with disfavor and rarely granted. *Doe v. United States Department of Justice*, 243 U.S. App. D.C. 354, 753 F.2d 1092, 1102 (D.C. Cir. 1985). A motion to dismiss is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Martin v. Ezeagu*, 816 F. Supp. 20, 23 (D.D.C. 1993) (internal quotations omitted); *see Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed.2d 80, 78 S. Ct. 99 (1957) (stating that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

The court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party in applying Rule 12(b)(6). *See Kowal v. MCI Communications Corp.*, 305 U.S. App. D.C. 60, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Schuler v. United States*, 199 U.S. App. D.C. 23, 617 F.2d 605, 608 (D.C. Cir. 1979) (stating that the court must give the plaintiff "the benefit of all inferences that can be derived from the facts alleged").

Antitrust claims typically are complex and fact-intensive, but the Federal Rules of Civil Procedure do not impose heightened pleading requirements in antitrust claims. *St.*

3

*Bernard Gen. Hosp., Inc. v. Hospital Serv. Ass'n,* 712 F.2d 978, 985 n.13 (5th Cir. 1983). The notice pleading approach embodied in the Federal Rules of Civil Procedure only requires a claimant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In many antitrust cases the type of detailed information necessary to ultimately prove a claim is exclusively in the possession of the defendant. For this reason, "dismissals prior to giving the plaintiff an ample opportunity for discovery should be granted very sparingly." *Hospital Bldg. Co. v. Rex Hosp. Trustees,* 425 U.S. 738, 746, 48 L. Ed. 2d 338, 96 S. Ct. 1848 (1976).

Applying the foregoing standard of review in light of the considerations discussed below, DC Kickball's counterclaims provide fair notice to Plaintiff and should not be dismissed.

### III.   DC KICBALL HAS SUFFICIENTLY PLEAD ITS COUNTERCLAIMS

#### A.   DC Kickball Has Properly Alleged Antitrust Injury

DC Kickball clearly has alleged antitrust injury; that is, an injury of the type the antitrust laws were intended to prevent and which flows from that which makes Plaintiff's acts unlawful. The requisite injury need only reflect the anticompetitive effect either of the antitrust violation or of anticompetitive acts made possible by the violation. In short, antirust injury is "the type of loss that the claimed [antitrust] violations . . . would be likely to cause." *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 125 (1969).

The well-pleaded allegations of DC Kickball's counterclaims, as well as factual allegations in Plaintiff's own complaint, clearly show such an antitrust injury or threat of antitrust injury. The facts alleged fully support DC Kickball's claims of concerted action

by WAKA to exclude DC Kickball, a direct competitor of WAKA, as well as others, from competing in the relevant market.

WAKA's own pleadings proclaim that it is the world's largest adult social kickball organization. (Plaintiff's Complaint, ¶ 9). WAKA's pleadings also reflect the expansive popularity of adult kickball. According to the pleadings, as of 2002, WAKA had registered 3,781 players in 10 divisions, and by 2004 WAKA has established leagues in 15 states. (Plaintiff's Complaint, ¶¶ 22 & 23). In its Complaint, WAKA accuses virtually every adult kickball league in the United States of "theft" based on WAKA's illusory claim to have "invented" the rules of kickball universally used in adult kickball leagues across the country.

DC Kickball has plead and alleged facts demonstrating that WAKA possesses monopoly power in the relevant market. The "well pleaded" factual allegations in DC Kickball's counterclaim demonstrate that WAKA – the self-proclaimed "world's largest adult social kickball organization" – holds a dominant position in the United States and Washington, D.C. adult kickball markets. The rules for the game of kickball used by adult kickball leagues have long been in the public domain – despite WAKA's illusory claim to have "invented" these rules in 1998 – and these rules do not constitute copyrightable subject matter. WAKA is knowingly asserting a baseless claim of copyright infringement in an impermissible attempt to prevent DC Kickball (and consequently other smaller adult kickball leagues) from operating unless sanctioned by WAKA to do so. And the power to sanction is the power to exclude. (*See* Counterclaim, ¶¶ 6, 7 & 10).

The factual allegations taken together, sufficiently establish (especially in the context of a Rule 12(b)(6) motion) the existence of antitrust injury or threat of antitrust injury and clearly provide adequate notice of DC Kickball's claims to WAKA. Plaintiff's own allegation that it "is the world's largest adult social kickball organization" when combined with the allegations regarding the expansively growing market and WAKA's actions to impermissibly use its copyright beyond its legal scope against DC Kickball support the claim that such injury is occurring or likely to occur throughout the relevant market for adult kickball.

In any event, the Supreme Court has made clear in cases arising under Section 2 of the Sherman Act that only a thorough analysis of each fact situation will reveal whether the monopolist's conduct is unreasonably anticompetitive and thus unlawful. *See Eastman Kodak Co. v. Image Tech Servs.*, 504 U.S., 451, 467 (1992). Accordingly, it would be premature for this Court to conclude, before any evidence has been presented, that DC Kickball can prove no set of facts establishing the requisite antitrust injury. *See Conley v. Gibson*, 355 U.S. at 45-46 (1957). DC Kickball has sufficiently stated claims upon which relief may be granted under the federal jurisprudence related to Rule 12(b)(6) motions and is entitled to at least conduct discovery related to WAKA's anticompetitive behavior.

**B.   DC Kickball Has Alleged Sufficient Facts Related to Attempted Monopolization**

DC Kickball has alleged sufficient facts related to attempted monopolization, including, as shown above, allegations of harm and/or threatened harm sufficient to support attempted monopolization. WAKA's conclusory allegation that DC Kickball has

failed to properly allege the existence or identity of a relevant market (Motion to Dismiss at 6) is preposterous.  Paragraph 9 of DC Kickball's Counterclaim unequivocally states that "[t]he relevant market is the market for organizing and conducting adult kickball leagues in the United States and/or the District of Columbia."  Further, DC Kickball alleges and pleads facts in the very next paragraph that WAKA possesses monopoly power in the relevant market.

WAKA's conclusory argument that DC Kickball has "not at all pled a dangerous probability that WAKA will succeed in monopolizing the relevant market, i.e., 'where the defendant possesses a significant market share when it undertakes the challenged anticompetitive conduct'" is similarly unavailing.  Plaintiff's own pleadings, including its allegation that it is the world's largest adult kickball organization, show that it wields sufficient market share to allow it to succeed in monopolizing the relevant market.  WAKA holds a dominant position in the relevant market.  What WAKA is capable of doing to DC Kickball, WAKA is capable of doing to all similarly situated competitors.

In conclusion, the allegations of DC Kickball's well-pleaded counterclaim are sufficient to state a cause of action for which relief may be granted.  *See Conley v. Gibson*, 355 U.S. at 45-46 (1957).  It would therefore be premature and unfair to dismiss DC Kickball's claims at this stage, before any evidence has been presented, without affording DC Kickball an opportunity for discovery.  *See Scheuer v. Rhodes*, 416 U.S. at 236.

    C.    **The <u>Intracorporate Immunity Doctrine Does Not Bar DC Kickball's Counterclaims</u>**

The intracorporate immunity doctrine is only applicable to claims under Section 1 of the Sherman Act. Purely independent action, i.e., the conduct of a single firm, is squarely within the reach of Section 2 of the Sherman Act. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767-68 (1984). Thus, contrary to WAKA's overly general assertions that "under the antitrust theories posited by Defendants, there must be more than one actor", and "…Plaintiff's amended complaint (sic) therefore fails to state a Sherman Act claim" DC Kickball, as shown above, has sufficiently plead a cause of action against Plaintiff (as an individual entity) under Section 2 of the Sherman Act.

    D.    **<u>DC Kickball's Counterclaim Under the District of Columbia Antitrust Law Should not be Dismissed</u>**

DC Kickball relies on the arguments presented above in connection with its counterclaims under the federal antitrust statutes and urges that for at least the same reasons, its counterclaim under the District of Columbia statute should not be dismissed.

    E.    **<u>DC Kickball's Counterclaims are not Barred by the *Noerr-Pennington* Doctrine</u>**

The *Noerr-Pennington* doctrine is an affirmative defense. *See Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860, (5th Cir. 2000) ("In *Acoustic Systems* [*Acoustic Systems v. Wegner Corp*., 207 F.3d 287, 296 (5th Cir. 2000)], we stated that the *Noerr-Pennignton* doctrine does not provide persons complete immunity from suit; rather, the 'doctrine provides only an affirmative defense.'") Further, a Rule 12(b)(6) dismissal can only be

8

sought on affirmative defenses that appear on the face of the plaintiff's complaint. *See Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). The applicability of the *Noerr-Pennington* doctrine does not appear on the face of DC Kickball's counterclaim. To the contrary, the well-pleaded factual allegations of DC Kickball's counterclaim bring this case squarely within the "sham litigation" exception to the *Noerr-Pennington* doctrine.

The crux of DC Kickball's antitrust counterclaims is that Plaintiff is acting to stifle competition in the adult kickball market by *inter alia* improperly seeking to extend the scope of protection of its alleged copyright in rules for a simple game that has been played for decades. WAKA's *Noerr-Pennington* argument in support of its Motion to Dismiss is misplaced. WAKA essentially argues that it should enjoy absolute immunity from liability because it has alleged an intellectual property (copyright) claim— a position that conveniently overlooks the fact that sham litigation in furtherance of anticompetitive behavior is a cognizable cause of action. Fortunately, this is a distinction that has not been overlooked by the courts.

In *Trueposition, Inc. v. Allen Telecom, Inc.*, 2003 U.S. Dist. Lexis 881 (D. Del. January 21, 2003), the court refused to dismiss a counterclaim for sham litigation, stating that such a claim was essentially an assertion that antitrust law has been violated. The court noted that, although the counterclaimant had not specifically pled a violation of antitrust laws, its sham litigation claim was sufficient to give notice of the basis of the claim in the context of a Rule 12(b)(6) motion to dismiss. The court's decision was premised on both the liberal pleading philosophy of the Federal Rules, and the court's

9

responsibility to examine the complaint to determine if the allegations provide for relief on any possible theory. *Id.* at *13 n. 4.

In the instant case, the well-pleaded allegations of DC Kickball's counterclaim, which the Court accepts as true under deferential standard applied to a Rule 12(b)(6) motion, clearly states a cause of action based on WAKA's knowing assertion of a baseless copyright complaint in furtherance of concerted and unlawful anticompetitive conduct. This case clearly falls within the sham litigation exception to the *Noerr-Pennington* doctrine.

In any event, before applying the *Noerr-Pennington* doctrine – an affirmative defense – to dismiss any of DC Kickball's counterclaims, the Court should require WAKA to demonstrate the applicability of the doctrine to the specific claims asserted by DC Kickball, and the Court should give DC Kickball an opportunity in discovery to demonstrate that this case falls within an exception to the doctrine, should the Court conclude that WAKA has met its burden. WAKA is asking the Court to flip-flop this well-established and mandated procedure: to put the burden on DC Kickball to prove the non-applicability of the doctrine, while denying DC Kickball the right to discovery.

## IV.     ALTERNATE RELIEF REQUESTED

DC Kickball respectfully requests leave from the Court to amend its counterclaims should the Court be inclined to grant Plaintiff's Motion to Dismiss in any respect. Leave to amend should be freely given when justice requires it. Fed. R. Civ. P. 15(a). A district court should grant leave to amend unless there is a good reason to deny leave, such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the other party.

*Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962).  DC Kickball respectfully submits that none of the above circumstances supporting denial of the request for leave to amend exist in this case and Plaintiff will not be unduly prejudiced should leave be granted.

## V.     CONCLUSION

For at least the foregoing reasons, DC Kickball respectfully requests the Court to deny Plaintiff's Motion to Dismiss in all respects, or alternately, to grant leave for DC Kickball to amend its counterclaims.

**DATED**:  January 26, 2007                              **NOVAK DRUCE & QUIGG LLP**

/s/ Melvin A. Todd
By:    Melvin A. Todd
          D.C. Bar No. 481782
          1300 Eye Street, N.W.
          400 East Tower
          Washington, DC 20005
          Phone: 202-659-0100
          Facsimile: 202-659-0105
          *Attorney for Defendants*

**OF COUNSEL:**
Gregory V. Novak, Esq.
NOVAK DRUCE & QUIGG LLP
1300 Eye Street, N.W.
400 East Tower
Washington, DC 20005
Phone: 202-659-0100
Facsimile: 202-659-0105

William R. Towns, Esq.
Jeffrey J. Morgan, Esq.
NOVAK DRUCE & QUIGG LLP
Wells Fargo Plaza
1000 Louisiana
Fifty Third Floor
Houston, TX 77002
Phone: 713-571-3400

**CERTIFICATE OF SERVICE**

This certifies that a true and correct copy of the foregoing **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S 12(b)(6) MOTION TO DISMISS COUNTERCLAIMS AND/OR 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING COUNTERCLAIMS** was served on Plaintiff's counsel via the ECF system and by First Class Mail and Facsimile Transmission on January 26, 2007 as follows:

    Thomas M. Dunlap, Esq.
    Lee E. Berlik, Esq.
    Eugene W. Policastri, Esq.
    Dunlap, Grubb & Weaver, P.C.
    199 Liberty St., SW
    Leesburg, VA 20175-2715
    Facsimile: 703-777-3656

    /s/ Melvin A. Todd
    Of Novak Druce & Quigg LLP