**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WAKA LLC,

Plaintiff,

v.

DC KICKBALL, *et al.*,

Defendants.

Civil Action No. 06-984 (EGS)

**MEMORANDUM OPINION**

Plaintiff, World Adult Kickball Association, LLC ("WAKA"), filed a complaint alleging copyright infringement and defamation against defendants, Carter Rabasa ("Rabasa") and his non-stock organization, DC Kickball. In response to plaintiff's complaint, defendants filed counterclaims for violations of the antitrust laws of the United States and the District of Columbia. Specifically, defendants allege violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2, and D.C. Code §§ 28-4502 and 28-4503. Pending before the Court is plaintiff's motion to dismiss defendants' counterclaims under Rules 12(b)(6) and/or 12(c) of the Federal Rules of Civil Procedure. Upon review of the motion, response and reply thereto, the pleadings, and applicable law, the Court **grants in part and denies in part** plaintiff's motion.

## I. BACKGROUND

Plaintiff, WAKA, was founded in 1998 by four friends (David Lowry, John LeHane, Jimmy Walicek, and Rich Humphrey), who each hold one-quarter interest in the organization. Compl. ¶ 3. The purpose of WAKA was to start a co-ed organization that used kickball to provide a social outlet for young professionals. *Id.* After discovering how successfully men and women interacted with each other at their functions, WAKA conducted an extensive search for published kickball rules. *Id.* During this time, there were no other adult kickball groups, no published history of social kickball, or anything of the like. *Id.* Subsequently, WAKA promulgated what it claims are the first-ever "Official Kickball Rules" that year. *Id.* ¶ 4.[1]

In April 1998, WAKA created its first website and email address. *Id.* ¶ 5. At that time, WAKA had approximately 150 players on seven different teams, all within the same division. *Id.* In 2001, WAKA increased its membership base to 1,200 players in four different divisions. *Id.* ¶ 6. In 2004, WAKA expanded to leagues in fifteen different states. *Id.* ¶ 23. Finally, in

[1] Although the sport of kickball has been around for decades, WAKA claims to have unique rules within their league, which require four men and four women to be on the field at all times, and require individuals to be at least twenty-one years of age to participate in post-game functions with the group. Compl. ¶ 4.

2005, WAKA's "Official Kickball Rules" became registered as copyrighted material. *Id.* ¶ 22.

On February 10, 2005, WAKA received an email from the Kickball League of Baltimore, Inc. that indicated that an organization called DC Kickball existed and was looking for players in the area. *Id.* ¶ 25. Upon further investigation, WAKA discovered that Carter Rabasa, former WAKA division officer, was the person responsible for DC Kickball. *Id.* From May-August 2002, Rabasa was vice president of the WAKA DC Independence Division. *Id.* ¶ 21. Then from April-August 2002, Rabasa became president of that division. *Id.* Finally, on April 25, 2004, Rabasa formed and became owner of DC Kickball. *Id.* ¶ 24.

On February 24, 2005, Rabasa posted a message on craigslist.com, seeking volunteers to join his league. *Id.* ¶ 26. Lowry, one of WAKA's co-founders made an anonymous request to Rabasa's posting and thereafter received a packet of information. *Id.* Within that packet, WAKA found a copy of DC Kickball's rules, which are alleged to be copied from WAKA. *Id.*

Subsequently, WAKA filed a complaint for copyright infringement, which was transferred to this Court from the U.S. District Court for the Eastern District of Virginia on May 30, 2006. On July 21, 2006, defendants submitted an answer to plaintiff's complaint with counterclaims for antitrust

violations, and on January 9, 2007, plaintiff filed the instant motion to dismiss defendants' counterclaims.

## II. ANALYSIS

### A. Standard of Review

#### 1. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Dismissal is not appropriate unless the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1974) (holding that a court may dismiss a complaint for failure to state a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"). The complaint "is construed liberally in the plaintiffs' favor, and [the Court should] grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Andrx Pharm. v. Biovail Corp. Int'l*, 256 F.3d 799, 805 (D.C. Cir. 2001). "[T]he court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal*, 16 F.3d at 1276.

To survive a 12(b)(6) motion to dismiss a claim in an antitrust case, plaintiffs must do more than simply paraphrase the language of the antitrust laws or state in conclusory terms that the non-movant has violated those laws. *See Dial A Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584, 588 (D.D.C. 1995), *aff'd* 82 F.3d 484 (D.C. Cir. 1996). "[I]f [the plaintiff] claims an antitrust violation, but the facts he narrates do not at least outline or adumbrate such a violation, he will get nowhere merely by dressing them up in the language of antitrust." *Id.* (quoting *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648 (7th Cir. 1984)) (internal quotation marks omitted). "Bare legal conclusion[s]" will not suffice. *Id.* Furthermore, because "the proof is largely in the hands of the alleged conspirators," dismissal procedures "should be used sparingly in complex antitrust litigation" until the plaintiff is given ample opportunity for discovery. *Pollar v. Columbia Broad. Sys.*, 368 U.S. 464, 473 (1962).

**2. Rule 12(c)**

Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for a judgment on the pleadings after the pleadings are closed. The legal standard to be applied to a Rule 12(c) motion for judgment on the pleadings is the same as that applied to a Rule 12(b)(6) motion. *See Doe v. Dist. of Columbia*, 238 F. Supp. 2d. 212, 216 (D.D.C. 2002).

In this case, plaintiff filed an answer to the counterclaims before filing the motion to dismiss. The Court therefore treats the motion as one for a judgment on the pleadings pursuant to Rule 12(c).

**B. Federal Antitrust Claims**

**1. Defendants Have Sufficiently Alleged an Antitrust Injury**

The U.S. Supreme Court has made it clear that a plaintiff claiming federal antitrust violations must plead and prove "more than injury casually linked to an illegal presence in the market." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Because the antitrust laws "were enacted for the 'protection of *competition*, not *competitors*,'" *id.* at 488 (*quoting Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)), a plaintiff must also show an anticompetitive impact on the market. *Id.* at 488-89. Therefore, in proving an antitrust injury, the plaintiff must plead and prove an "[actual] injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.* at 489. "[A]bsent injury to competition, injury to plaintiff as a competitor will not satisfy the pleading requirement." *Mizlou Television Network, Inc. v. Nat'l Broad. Co.*, 603 F. Supp 677, 684 (D.D.C. 1984). The reason an antitrust plaintiff is required to plead antitrust injury is to assure that a plaintiff can

recover "only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990).

In the present case, defendants allege that plaintiff has brought a baseless action for copyright infringement in an attempt to impermissibly expand the scope of protection for their kickball rules. Defs.' Counterclaims ¶ 7. Defendants further allege that the copyright action was intended to and has unreasonably restrained trade and inhibited competition in the adult kickball league market. *Id.* ¶ 10. Given the liberal pleading rules, defendants have alleged enough to survive a motion for judgment on the pleadings as to the antitrust injury element of their claims.

**2. Defendants Have Failed to Allege Sufficient Facts to Support a Claim for Restraint on Trade under Section 1 of the Sherman Antitrust Act**

Under Section 1 of the Sherman Antitrust Act, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. To state a claim based on a Section 1 violation, a plaintiff must allege that "defendants entered into some contract, combination, conspiracy, or other concerted activity that unreasonably restricts trade in the relevant market." *Dial A Car*, 884 F. Supp. at 591; *see also Ass'n of Retail Travel*

*Agents, Ltd. v. Air Transport Ass'n of Am.*, 635 F. Supp. 534, 536 (D.D.C. 1986) ("Section 1 of the Sherman Act requires a party to show concerted activity in restraint of trade."). Section 1 does not prohibit unilateral or independent conduct by one organization, "no matter how anticompetative it might be." *See Atl. Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.*, 295 F. Supp. 2d 75, 90 (D.D.C. 2003). Moreover, an organization cannot conspire with its own officers nor can officers within one organization conspire to restrain trade for purposes of Section 1 of the Sherman Antitrust Act. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984).

In this case, although defendants identify the "relevant market" as the "market for organizing, and conducting adult kickball leagues in the United States and/or the District of Columbia," Def. Counterclaims ¶ 9, defendants have not sufficiently alleged any facts from which the Court can infer concerted activity that unreasonably restrains trade. Defendants allege that plaintiff "engaged in an unlawful combination or conspiracy in violation of Section[] 1 . . . of the Sherman Act to unreasonably restrain trade" and that plaintiff's "act of asserting a baseless copyright claim against [defendants] was intended to and unreasonably has restrained trade." *Id.* at ¶ 10. Defendants only allege a unilateral and independent act (filing a lawsuit) by WAKA and do not even attempt to name any other

entities with which plaintiff engaged in any concerted activity. Plaintiff cannot engage in a conspiracy or combination with itself. Accordingly, the Court dismisses defendants' counterclaims to the extent they allege claims under Section 1 of the Sherman Antitrust Act.

### 3. Defendants Have Alleged Sufficient Facts to Support a Claim of Monopolization and/or Attempted Monopolization

Defendants allege both monopolization and attempted monopolization as part of their counterclaims. To plead a claim for actual monopolization, defendants must make factual allegations showing "'(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident.'" *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 41 (D.D.C. 2007) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)).

Defendants allege that plaintiff "possesses monopoly power in the relevant market" and "willfully acquired and maintained that power as demonstrated by conduct designed to exclude or inhibit competition in the relevant market." Defs.' Counterclaims ¶ 10. Defendants also allege that plaintiff asserted its baseless copyright claim with the intent to and the effect of inhibiting competition in the relevant market. *Id.*

By alleging that plaintiff engaged in anticompetitive behavior through the filing of a baseless copyright infringement lawsuit, defendants have invoked the sham litigation exception to the *Noerr-Pennington* doctrine of antitrust immunity. The Supreme Court established immunity to certain antitrust suits in *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *Mine Workers v. Pennington*, 381 U.S. 657 (1965). These cases provided that "the Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." *Noerr*, 365 U.S. at 136. In later Supreme Court case law, immunity was extended to citizens who petition administrative agencies or courts. *See Cal. Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972).

*Noerr-Pennington* immunity has its limits. A plaintiff who pursues a "sham" petition or litigation solely for the purpose of interfering directly with the business relationships of its competitors is not entitled to immunity and may be sued for an antitrust violation. *See Noerr*, 365 U.S. at 144; *Prof'l Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 61 (1993) (finding that sham litigation waives immunity). Moreover, courts have recognized a "sham litigation" counterclaim as a cognizable cause of action for a violation of the Sherman

Antitrust Act. *Trueposition, Inc. v. Allen Telecom*, C.A. No. 01-823, 2003 U.S. Dist. LEXIS 881, at *12-*13 (D. Del. Jan. 21, 2003) (citing *Prof'l Real Estate Investors*).

To establish that a claim falls within the "sham litigation" exception, the plaintiff must demonstrate two factors: (1) the claim was so objectively baseless that no reasonable litigant could realistically expect success on the merits; and (2) the baseless lawsuit conceals "an attempt to interfere *directly* with the business relationships of a competitor . . . through the use [of] the governmental *process* – as opposed to the *outcome* of that process – as an anticompetitive weapon." *Prof'l Real Estate Investors*, 508 U.S. at 60-61 (citations and internal quotation marks omitted). The Court examines the litigant's subjective motivation under the second prong of the sham litigation test only if the challenged litigation is found to be objectively meritless under the first prong. *Id.* at 60.

Although defendants' monopolization counterclaim is somewhat conclusory, defendants provide enough factual allegations to put plaintiff on notice of their claim. Specifically, defendants allege both prongs of the sham litigation exception in that they allege that plaintiff filed a baseless copyright infringement suit with the intent of inhibiting competition. *See, e.g.*, *Trueposition*, 2003 U.S. Dist. LEXIS 881, at *13 n.4 (finding that defendant's invocation of the sham litigation doctrine was enough

to state a claim and survive a Rule 12(b)(6) motion to dismiss). Accordingly, the Court finds that defendants have stated a monopolization claim sufficient to survive a motion for judgment on the pleadings.

To state a claim for attempted monopolization, defendants must provide facts showing "(1) a specific intent to destroy competition or control competition in the relevant market, and (2) a dangerous probability of success in actually monopolizing the relevant market." *Dial A Car*, 884 F. Supp. at 589-90. To succeed in such a claim, the plaintiff must establish "'a definition of the relevant market and examination of market power.'" *Dial A Car*, 884 F. Supp. at 590 (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 453 (1993)). "The key inquiry involves the power of the defendant in the market in which it competes. Initially, therefore, the plaintiff must plead facts sufficient to establish the existence of a relevant market and the defendant's power in that market." *TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025-26 (10th Cir. 1992).

Just as the Court finds that the monopolization claim survives at this early stage, so too does the Court find that the attempted monopolization claim survives for essentially the same reasons. The invocation of the sham litigation doctrine coupled with defendants' claims that plaintiff has monopoly power in the

market is sufficient to put the plaintiff on notice of the nature of defendants' claim for attempted monopolization in the market for organizing and conducting adult kickball leagues in the United States and/or the District of Columbia. Accordingly, the Court finds that defendants have stated an attempted monopolization claim sufficient to survive a motion for judgment on the pleadings.

**C. State Law Counterclaims**

If the complaint fails to state a claim under the Sherman Antitrust Act, it also fails to state a claim under the District of Columbia Unfair Trade Practices Act. *See Dial A Car*, 884 F. Supp. at 588 n.2; *Mazanderan v. Independent Taxi Owners' Ass'n, Inc.*, 700 F. Supp. 588, 591 n.9 (D.D.C. 1988). Because defendants have not sufficiently alleged a violation of Section 1 of the Sherman Antitrust Act in their counterclaims, they also fail to state a claim under D.C. law prohibiting contract, combination, or conspiracy to restrain trade. *See* D.C. Code § 28-4502 (patterned on 15 U.S.C. § 1). Defendants' counterclaim for monopolization or attempted monopolization under D.C. Code § 28-4503, however, survives just as defendants' Sherman Act Section 2 claim survives.

**D. Stay of Antitrust Counterclaims**

Although defendants have alleged enough to survive a motion for judgment on the pleadings as to their claimed violations of

Section 2 of the Sherman Antitrust Act and D.C. Code § 28-4503, the Court shall stay all proceedings on the counterclaims until after resolution of the copyright infringement action. Once there is discovery and a decision on any possible summary judgment motion on the copyright claim, the Court will then have a record before it on which it can determine whether the copyright claim was objectively baseless. If defendants win on a summary judgment motion and are able to show that the copyright claim was objectively baseless, they could then pursue discovery on step two of the sham litigation test – plaintiff's intent in filing the copyright suit. If, on the other hand, plaintiff survives summary judgment on the copyright claim and the Court concludes that the litigation was not objectively meritless, then plaintiff will be entitled to judgment in its favor on the counterclaims because defendants will have failed to show that the sham litigation doctrine should overcome the immunity to which plaintiff is entitled for bringing its copyright suit. In the latter case, no discovery on the antitrust issue would be needed. *See Skinder-Strauss Associates v. Mass. Continuing Legal Educ.*, 870 F. Supp. 8, 11 (D. Mass. 1994) (adopting this stay and sever approach as to the antitrust counterclaims in a nearly identical lawsuit).

## III. CONCLUSION

For the foregoing reasons, the Court **grants in part and denies in part** plaintiff's motion for judgment on the pleadings. Defendants have failed to set forth any factual allegations to establish a well-pleaded counterclaim for contract, combination, or conspiracy to restrain trade under Section 1 of the Sherman Antitrust Act or D.C. Code § 28-4502. However, the Court finds that defendants have set forth a claim under Section 2 of the Sherman Act and D.C. Code § 28-4503 for monopolization and/or attempted monopolization. Furthermore, the Court stays any discovery on the antitrust counterclaims until after resolution of the copyright infringement action.

**Signed: Emmet G. Sullivan**
**United States District Judge**
**May 25, 2007**